IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:02CV170-MU-02

| | |
|---|---|
| EDWARD F. ARRINGTON, )<br>    Petitioner, )<br>)<br>    v. )<br>)<br>SID HARKLEROAD, Supt., )<br>    Respondent. )<br>_____) | ORDER |

**THIS MATTER** comes before the Court on petitioner's Petition for a Writ of <u>Habeas Corpus</u> under 28 U.S.C. §2254, filed July 12, 2002; and on the respondent's "Motion For Summary Judgment . . . ," filed September 23, 2002. For the reasons stated herein, and for the further reasons stated in the respondent's supporting memorandum, the respondent's Motion for Summary Judgment will be <u>granted</u>; and the petitioner's Petition will be <u>denied</u> and <u>dismissed</u>.

### I.   <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

According to the record of this matter, on October 12, 1998, the petitioner pled guilty to one count of felony Possession of Cocaine; he pled guilty to two counts of Possession of Drug Paraphernalia; he pled guilty to one count of Second Degree Trespassing; and he pled guilty to one count of being an Habitual Felon, all in violation of North Carolina Law. On that occasion,

the Superior Court of Buncombe County sentenced the petitioner to a single term of 135 to 171 months imprisonment.

The petitioner timely appealed his case to the North Carolina Court of Appeals, challenging the legality of the search which revealed the contraband and the trial court's denial of his Motion to Suppress. However, by an Order entered October 5, 1999, the State Court of Appeals rejected the petitioner's appeal upon a finding of "no error." Following that denial, the petitioner did not <u>timely</u> seek any additional direct review in the State Supreme Court.

Rather, after waiting nearly two years, on August 19, 2001, the petitioner filed an out-of-time appeal in the State Supreme Court, along with a Petition for Discretionary Review (hereafter "PDR"). Both of those documents merely reasserted the petiioner's challenges to the search and the denial of his Motion to Suppress. Not surprisingly, then, the State Supreme Court dismissed the petitioner's appeal, <u>ex mero motu</u>. That Court also converted the petitioner's PDR into a Petition for a Writ of Certiorari, but then denied the Petition.

Thereafter, on October 9, 2001, the petitioner initiated pursuit of collateral review by filing a Motion for Appropriate Relief (hereafter "MAR") in the Superior Court of Buncombe County. The petitioner's MAR argued that his conviction was obtained in violation of his constitutional rights; that the

Habitual Felon indictment somehow was fatally flawed; and that such invalid indictment divested the trial court of its subject matter jurisdiction. Once again, however, the petitioner's efforts were unsuccessful, and the trial court denied the MAR by Order of October 24, 2001. The petitioner did not appeal the denial of his MAR.

Rather, undaunted by his lack of success, on July 12, 2002, the petitioner filed the instant Petition for a Writ of Habeas Corpus. In this Petition, the petitioner argues: 1) that his Habitual Felon conviction was obtained in violation of his constitutional rights in that the corresponding indictment did not set forth all of the essential elements of the subject offense; 2) that the second indictment under which he was prosecuted as an Habitual Felon was unconstitutional since it failed to note that it was a "superceding" indictment; and 3) that his rights under N.C.Gen.Stat. §15a-1420-(c)(7) were violated by the trial Court's failure to make and enter conclusions of law in connec-tion with its denial of his MAR.

On September 23, 2002, the respondent filed his combined Motion for Summary Judgment and Answer to this Petition. By that document, the respondent denies that the petitioner is entitled to any relief. Specifically, the respondent argues that such Petition is subject to summary dismissal as untimely and as un-exhausted; and that the petitioner's claims are without merit in

any event.

On October 3, 2002, the petitioner filed a Response to the respondent's Answer and Motion for Summary Judgment. By that response, the petitioner does not assert that his case was timely filed, but rather suggests--pursuant to a case from the District of Columbia--that his untimeliness is a "technical error[]" which this Court should overlook in order to prevent an unjust result. As for the exhaustion problem, the petitioner again does not deny that he has failed to fully exhaust all of his claims. Instead, the petitioner contends that the exhaustion requirement could be "waived by the State or avoided by petitioner if attempt to exhaust would be futile." Ultimately, the petitioner contends that his claims have merit; therefore, he asks the Court to grant him the relief which he is seeking.

Nevertheless, the Court has conducted its own careful review of this matter, and has determined that the petitioner's Petition must be <u>dismissed</u> for the reasons which follow.

## II. **ANALYSIS**

### 1. **The record tends to show, and the petitioner does not deny, that his Petition is time-barred**.

Indeed, in April 1996, the U.S. Congress enacted the Antiterrorism and Effective Death Penalty Act, effectively amending 28 U.S.C. §2254 by adding the following language:

A 1-year period of limitation shall apply to an application for a writ of <u>habeas corpus</u> by a person in custody pursuant to

4

the judgment of a State court.  The limitation period shall run from the latest of--

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review:
>
> (B) the date on which the impediment to filing an application created by State in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> © the date on which the constitutional right asserted was initially recognized by the Supreme Court; if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Furthermore, the AEDPA provides that the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

In this case, the record reflects that the petitioner appealed his convictions and sentence to the State Court of Appeals, and that such appeal was denied by Order filed October 25, 1999.  The petitioner did not _timely_ seek any further direct review of his cases.  Accordingly, the petitioner's convictions and sentence became final on or about November 9, 1999--that is, at the expiration of the brief 15-day time period during which he

5

could have sought further direct review before the State Supreme Court.  See N.C.R.App.Proc. 15(b) (setting forth the 15-day time limit for seeking review of the State Court of Appeals' decisions).  As a result, and more critically, the petitioner's 1-year limitation period began to run on November 10, 1999, giving him up to and including November 10, 2000 in which to file the instant federal Petition for habeas corpus relief.  Hernandez v. Caldwell, 225 F.3d 435, 439 (4th Cir. 2000)(noting the 1-year time limit); and Harris v. Hutchinson, 209 F.3d 325, 328 (4th Cir. 2000) (same).  Obviously, however, the petitioner did not file this Petition by that date.

Furthermore, it is of little consequence to these calculations that the petitioner eventually filed an appeal and a PDR in August 19, 2001.  To be sure, since neither of those pleadings was filed within the 15-day period prescribed under State law, they cannot be construed as part of the petitioner's pursuit of direct review.  Rather, inasmuch as the State Supreme Court summarily dismissed the petitioner's appeal and treated his PDR as a certiorari petition, such pleadings cannot, in any case, toll or otherwise extend the petitioner's 1-year limitations period which already had expired long before such pleadings even were filed.

Similarly, notwithstanding the fact that the petitioner did seek collateral review in State Court by his October 5, 2001 MAR, he still cannot demonstrate that the instant Petition was timely

6

filed.  To be sure, just as with the petitioner's attempt at a belated appeal, and more so with his MAR, the petitioner's 1-year AEDPA deadline already had expired by the time that he sought such collateral review.  Therefore, the petitioner's pursuit of collateral review cannot render this Petition timely filed.  To put it simply, the petitioner's untimely efforts at direct and collateral review in the North Carolina courts can be summed up as too little, too late for the purposes of rendering this Petition timely filed.  Therefore, the instant Petition must be dismissed.[1]

## 2. **The petitioner's claims all lack merit**.

Finally, it has not escaped the Court's attention that the petitioner has failed to set forth a constitutional claim for relief in any event.  Indeed, although the petitioner is challenging the Habitual Felon indictment, claiming both that it failed to set forth all of the essential elements of the crime and that it failed to note that it was "superceding," such claims

---

[1] In addition to its untimeliness, this Court notes that the subject Petition is subject to dismissal for the petitioner's failure to fully exhaust of the claims set forth therein.  Indeed, while the petitioner presented his first claim in his MAR, he failed to appeal the denial of that MAR to the State Court of Appeals.  That failure renders the petitioner's first claim unexhausted.  See Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997) (noting that a claim is not exhausted if it has not been presented to the highest state court with jurisdiction to review it); see also Rose v. Lundy, 455 U.S. 509, 522 (1982).  Similarly, the record reveals that the petitioner did not even raise his third claim during his direct or collateral proceedings, and he did not raise the exact same second claim during those proceedings.  Thus, the petitioner's failure to have raised those matters, renders them unexhausted. Matthews, 105 F.3d at 911 ("[O]blique references which hint that a theory may be lurking in the woodwork will not suffice.").

7

are feckless. That is, the petitioner has failed to identify the "element" which he believes was missing from that charge. Likewise, the petitioner has failed to indicate how he believes he was harmed by that omission, or by the omission of the word "superceding" from the indictment. Therefore, these baseless, conclusory allegations certainly cannot carry the day for the petitioner. See Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994) (noting the general principle that in civil litigation, the litigant "must present more than naked allegations" to survive dismissal), cert. denied, 514 U.S. 1022 (1995).

Equally problematic for the petitioner is the fact that the State has demonstrated that the indictment in question was constitutionally adequate in that it set forth the underlying felonies which triggered the petitioner's habitual felon status, and it listed the state(s) against which those crimes were committed. Therefore, the indictment gave the petitioner ample notice of the propriety of his prosecution as a recidivist.

Furthermore, the law makes it clear that post-conviction challenges to the sufficiency of the indictment rarely are successful. Midland Asphalt Corp. V. United States, 489 U.S. 794, 802 (1989); United States v. McDonald, 61 F.3d 248, 252-53 (4th Cir. 1995). When challenged in a post-conviction context, "[i]ndictments and informations are construed more liberally. . . and every intendment is then indulged in support of . . . suffi-

8

ciency.  United States v. Sutton, 961 F.2d 476, 479 (4th Cir. 1992).  Ultimately, in order to be successful on such a post-conviction challenge, a petitioner must make a showing of actual prejudice.  Therefore, since the petitioner has failed in this regard, he clearly cannot prevail on these claims.

Last, with regard to the petitioner's claim that the MAR Court failed to make and enter conclusions of law in connection with its denial of his MAR, such allegation also falls far short of stating a constitutional claim for relief.  To be sure, insofar as the petitioner expressly is relying upon N.C.Gen.Stat. §15A-1420(c)(7) as the basis of his claim that the MAR Court violated his constitutional rights, it is clear that the petitioner cannot prevail.  Certainly, sole reliance upon a State statute simply cannot state a claim for a constitutional violation.

Rather, if this Court were to reverse the petitioner's convictions due to the MAR Court's failure to make and enter conclusions, this Court would be imposing a "new rule" of constitutional adjudication in violation of the mandate set forth in Teague v. Lane, 489 U.S. 288 (1989) (announcing the non-retroactivity doctrine which precludes habeas courts from announcing "new rules" of constitutional law in collateral proceedings).  Therefore, the petitioner is not entitled to any relief on this claim.

9

### III. CONCLUSION

The petitioner has failed to demonstrate that his Petition was timely filed; that it contains only fully exhausted claims; or, in any event, that his claims entitle him to federal habeas relief. Therefore, the respondent is entitled to summary judgment.

### IV. ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1. That the respondent's Motion for Summary Judgment is **GRANTED;** and

2. That the petitioner's Petition for a Writ of Habeas Corpus is **DENIED** and **DISMISSED.**

**SO ORDERED.**

**Signed: June 13, 2005**

*[Signature]*

Graham C. Mullen
Chief United States District Judge